1  Kim D. Stephens, WSBA #11984
   Mark D. Deife, WSBA #15532
2  Tousley Brain Stephens PLLC
   1700 Seventh Avenue, Suite 2200
3  Seattle, WA 98101
   (206) 682-5600
4  *Attorneys for Plaintiffs and the Proposed Class*

5

6              UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF WASHINGTON
7                      AT SPOKANE

8  DREGER ENTERPRISES, a Washington       NO.  CV-13-211-LRS
   joint venture, WAHL RANCH, LTD., a
9  Washington corporation, on their own   COMPLAINT FOR
   behalf and on behalf of all others similarly   DAMAGES AND
10 situated,                              INJUNCTIVE RELIEF

11              Plaintiffs,               **Class Action**
                                          **Demand for Jury Trial**
12 v.

13 MONSANTO COMPANY,

14              Defendants.

15              I.  **INTRODUCTION**

16      1.      Plaintiffs Dreger Enterprises and Wahl Ranch, Ltd., by undersigned
17
18 counsel, on their own behalf and on behalf of all others similarly situated, upon

19 personal knowledge as to their agents and their own acts, and upon information

20
21 and belief as to all other matters, allege in support of this Plaintiffs' Class Action

22 Complaint ("Complaint") as follows:

23              II.  **NATURE OF THIS ACTION**

24      2.      Genetically-engineered wheat resistant to the herbicide Roundup®
25
26 was developed and field tested by Defendant Monsanto Company ("Monsanto")

27 in 16 states, including Oregon, from 1998 through 2005. No genetically-

COMPLAINT - 1

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. (206) 682-5600 • FAX (206) 682-2992

engineered wheat has been approved in the United States for commercial planting or sale.

3.     Monsanto indicated that it dropped its development of genetically-engineered wheat in 2004 following concerns from U.S. farmers that it would endanger wheat exports.  As in the United States, no genetically-engineered wheat has been approved for commercial planting or sale in any foreign country, including any country to which U.S. farmers export wheat.

4.     The United States Department of Agriculture's ("USDA") Animal and Plant Health Inspection Service ("APHIS"), the Food and Drug Administration ("FDA"), and the U.S. Environmental Protection Agency ("EPA") share responsibility for regulating biotechnology products to ensure that approved products developed in the U.S. pose no risk to human health or the environment.  Genetically-engineered wheat is a "regulated article" that cannot be commercialized without this regulatory approval.

5.     At that time it was field-testing genetically-engineered wheat and through the present-day, Monsanto knew that conventional wheat could become contaminated with genetically-engineered wheat through a wide variety of means, including cross-pollination and commingling during harvest, storage, transport, and disposal.

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. (206) 682-5600 • FAX (206) 682-2992

6.     Monsanto failed to take the steps necessary to prevent cross-pollination with non-genetically engineered wheat.  Additionally or alternatively, Monsanto knew, or should have known, before it grew or otherwise disseminated genetically-engineered wheat, that such cross-pollination could not be prevented.

7.     Monsanto also failed to take the steps to prevent commingling of genetically-engineered wheat with non-genetically engineered wheat during test planting, harvest, handling, storage, transport and disposal. Additionally or alternatively, Monsanto knew, or should have known, before it grew or otherwise disseminated genetically-engineered wheat that the U.S. wheat production and marketing chain is a commodity-based system that gathers, commingles, and ships wheat from thousands of farms, and that widespread commingling of genetically-engineered wheat with non-genetically engineered wheat could not be prevented.

8.     Plaintiffs are wheat farmers in the Pacific Northwest who have commercially cultivated and harvested conventional engineered soft white wheat. Plaintiffs seek relief on their own behalf and behalf of all others similarly situated for compensatory, consequential, and exemplary damages.  Plaintiffs also seek injunctive relief arising from, inter alia:

(a)     Monsanto's failure, either by itself or through its agents, to adequately warn soft white wheat growers of the necessary precautions

COMPLAINT - 3

5624/001/270866.1

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. (206) 682-5600 • FAX (206) 682-2992

and limitations to prevent genetically-engineered wheat from commingling with non-genetically engineered wheat;

(b)     Monsanto's dissemination of genetically-engineered wheat with the knowledge that it was not approved by regulatory authorities and was likely to contaminate conventional wheat through cross-pollination, commingling, or other means;

(c)     Monsanto's dissemination of genetically-engineered wheat with the knowledge that it was likely to contaminate through commingling with conventional wheat in cultivation, harvesting, handling, storage, transport and/or disposal; and

(d)     the harm to Plaintiffs and the Class resulting from the genetically-engineered wheat's contamination of the general wheat supply in the form of, inter alia, (i) diminished prices for soft white wheat resulting from loss of export and domestic markets for that wheat; (ii) diminished prices for soft white wheat and/or increased grower costs resulting from the need to, inter alia, maintain the integrity of the soft white wheat supply and/or to keep genetically-engineered wheat from further entering the general wheat supply and export channels; and (iii) through the contamination of the entire wheat farming and production chain, including, but not necessarily limited to, farmland, farming

COMPLAINT - 4

5624/001/270866.1

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. (206) 682-5600 • FAX (206) 682-2992

1   equipment, storage facilities, harvesting equipment, seed cleaning and

2   conditioning apparatus, storage facilities, and transportation facilities and

3

4   equipment.

5   ### III.   JURISDICTION AND VENUE

6   9.      This Court has jurisdiction pursuant to 28 U.S.C. §1332(d) and the

7
8   Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1711, et seq.

9   10.     This Court has jurisdiction over the Defendant because it is a

10  corporation actively doing business and does sufficient business in Washington,

11
12  has sufficient minimum contacts in Washington, or otherwise intentionally avails

13  itself of the markets within Washington, through manufacturing, production,

14  promotion, sale, marketing and distribution of its products in Washington, to

15
16  render the exercise of jurisdiction by this Court proper and necessary.

17  11.     Venue is proper in this District of Washington pursuant to 28 U.S.C.

18
19  § 1391 because Defendant provides services to Class members located in this

20  District, conducts substantial business in this District, or otherwise has sufficient

21  contacts with this District to justify it being fairly brought into court in this

22
23  District.

24

25

26

27

COMPLAINT - 5

5624/001/270866.1

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. (206) 682-5600 ● FAX (206) 682-2992

# IV. <u>PARTIES</u>

**A.    Plaintiffs**

12.    Plaintiff Dreger Enterprises owns and operates a farm in Lincoln County, Creston, Washington.  Dreger Enterprises grew soft white wheat at all times during the relevant time period.  Dreger Enterprises has never knowingly grown genetically-engineered wheat.

13.    Plaintiff Wahl Ranch, Ltd. owns and operates a farm in Adams County, Lind, Washington.  Wahl Ranch, Ltd. grew soft white wheat at all times during the relevant time period.  Wahl Ranch, Ltd. has never knowingly grown genetically-engineered wheat.

**B.    Defendant**

14.    Monsanto Company is a Delaware corporation headquartered at 800 North Lindbergh Blvd., Saint Louis, Missouri, 63167. Monsanto sells products including field crop and vegetable seeds, plant biotechnology traits, and pesticides. The global company has over 20,000 employees with 404 facilities in 66 countries.

15.    The original Monsanto Company entered into a merger with Pharmacia & Upjohn, Inc. in December 1999 and changed its name to Pharmacia Corporation in 2000. A new Monsanto Company, based on the previous agricultural division of Pharmacia, was incorporated in Delaware as a wholly-

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. (206) 682-5600 • FAX (206) 682-2992

owned subsidiary of Pharmacia under the name Monsanto AG Company in February 2000.  When the merger became effective on March 31, 2000, the new Monsanto changed its name from Monsanto AG Company to Monsanto Company. Pursuant to a separation agreement signed in September 2000 with Pharmacia related to the transfer of the operations, assets and liabilities of the agricultural business from Pharmacia to the new Monsanto Company, the new Monsanto Company was required to indemnify Pharmacia for any liabilities related to the agricultural business or chemicals business, and for any liabilities assumed prior to the distribution agreement.

16.     In August 2002, Pharmacia distributed its shares to shareholders via a stock dividend – resulting in Pharmacia divesting itself of any equity interest in Monsanto. In April 2003, pursuant to a merger transaction, Pharmacia became a wholly-owned subsidiary of Pfizer. In December 2003, Monsanto assumed the management of certain tort litigation and environmental obligations related to its chemical business.

17.     Pharmacia itself eventually became a subsidiary of Pfizer in 2003. There is currently no control relationship between Monsanto and Pharmacia, and the indemnification obligations among the companies are ongoing.

18.     Monsanto conducts business throughout the United States, including the states in which the named Plaintiffs herein cultivate and/or harvest wheat.

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. (206) 682-5600 ● FAX (206) 682-2992

# V. FACTUAL ALLEGATIONS

**A.**   **Wheat Cultivation in the United States and Northwest States**

19.    Wheat is the principal U.S. cereal grain for export and domestic consumption. In terms of value, wheat is the fourth-leading U.S. field crop and serves as the nation's leading export crop.

20.    According to U.S. Wheat Associates, about $8.1 billion in wheat was exported in 2012, representing half of the total $17.9 billion wheat crop. Overall, about 50 percent of U.S. wheat is exported.

21.    Pacific Northwest Soft White contains soft white wheat primarily from Washington, Oregon, and Idaho. The three states together produced 86 percent of total US soft white wheat in 2008.

22.    About 90 percent of Oregon's wheat crop is exported.  Oregon's total wheat crop is valued at $300 million to $500 million per year. Soft white wheat dominates Oregon's total wheat production, with soft white wheat totaling 89 percent of the state's wheat production in 2011.

23.    In 2008, soft white wheat accounted for 79 percent of total wheat production in Washington state.  More than 46 percent of all U.S. white wheat comes from Washington alone.  Washington is one of the nation's leading wheat-exporting states, with 85 to 90 percent of its production exported each year.

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. (206) 682-5600 • FAX (206) 682-2992

24.     Idaho ranks fifth nationally in the production of all wheat. In 2011, soft white wheat accounted for approximately 57 percent of total wheat production in Idaho.  Nearly 50 percent of Idaho's wheat is exported each year.

25.     Used for bread, pasta, noodles, pizza and pastries, wheat has been the principal cereal crop in the United States since the 1700s.

26.     Today, approximately 85 to 90 percent of the Pacific Northwest's soft white wheat crop is exported to Japan, South Korea, Taiwan and other nations, where it is used to make noodles and crackers.

27.     Six classes of wheat are currently produced in the United States. The location of each class of wheat depends largely upon rainfall, temperature, soil conditions and tradition. The Pacific Northwest states of Oregon, Washington and Idaho, as well as portions of Montana and Northern California, grow the "soft white wheat" variety, which produces flour for baking cakes, crackers, cookies, pastries, quick breads and muffins. This wheat is also grown in Michigan and New York.  Soft white wheat primarily is exported to the Far East Asian region.

28.     In addition to soft white wheat, the other classes of wheat are (1) hard red winter produced in the Great Plains states; (2) hard red spring produced in Montana, North Dakota and Minnesota; (3) soft red winter grown primarily east of the Mississippi River; (4) durum produced in similar states to hard red

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. (206) 682-5600 • FAX (206) 682-2992

1 spring, primarily North Dakota; and (5) hard white wheat produced in a variety

2 of states including Idaho, Kansas, Nebraska and California. The following map

3 shows the primary growing locations of all six wheat classes:



HARD RED WINTER   HARD RED SPRING   SOFT RED WINTER   SOFT WHITE   HARD WHITE   DURUM

### B.  Roundup Resistant Genetically-Engineered Wheat

29.  Monsanto genetically has engineered "Roundup Ready" wheat to

include a genetic construct containing a Roundup-resistance gene, thus

generating a transgenic wheat plant resistant to the broad-spectrum herbicide

glyphosate (also known by the branded name Roundup®).

30.  Monsanto authorized 279 field tests with this specific glyphosate-

resistant wheat trait in years spanning from 1998 through 2005. Field tests were

conducted in Arizona, California, Colorado, Florida, Hawaii, Idaho, Illinois,

COMPLAINT - 10

5624/001/270866.1

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. (206) 682-5600 • FAX (206) 682-2992

Kansas, Minnesota, Montana, Nebraska, North Dakota, Oregon, South Dakota, Washington, and Wyoming. Monsanto has not disclosed specific farm locations of the company's field trials.

31.    No Roundup Ready wheat, or any other genetically-engineered wheat, has been authorized for commercial sale in the United States or anywhere else in the world.

32.    Monsanto dropped the project and never sought approval based on concerns from U.S. farmers that genetically-engineered wheat would endanger wheat exports. Although most American soybeans and corn are genetically engineered, these crops are largely consumed by livestock, used to make biofuels, or made into processed foods. Wheat products, in contrast, are consumed directly by people, and many consumers around the world reject genetically-engineered products.  A 2005 study estimated that the national wheat industry could lose $94 million to $272 million annually if genetically-engineered wheat were approved.

33.    In the planting, growing, harvesting, transporting, storing and/or disposing of the genetically-engineered wheat field tested between 1998 and 2005 by Monsanto and its field trial operators, some genetically engineered wheat escaped to contaminate conventional wheat. Monsanto knew, or should have known, that it was impossible to completely isolate the genetically-

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. (206) 682-5600 ● FAX (206) 682-2992

engineered wheat from other varieties of soft white wheat and that the

genetically-engineered wheat would inevitably cross-pollinate, commingle with

other conventional wheat seeds and/or find its way into the food chain through

other Monsanto acts or omissions as it has now done.

**C.     Discovery of Genetically-Engineered Wheat in Eastern Oregon**

34.     In May 2013, a farmer in Eastern Oregon trying to clear his fields

noticed that some plants he had sprayed with the herbicide glyphosate (the key

ingredient in Monsanto's Roundup) had not died.  The grower found the

Roundup-resistant wheat dispersed throughout the field and not concentrated in

any one location.

35.     The 125-acre field where the genetically engineered wheat was

found was one of several the grower had planted in the fall of 2011 with the soft

white winter wheat varieties "Rod" and "WB528." The grower used two types of

wheat in his fields that, to his knowledge, had never been used in Monsanto's

trials.

36.     "Rod" is a semi-dwarf soft white wheat variety with good cold

hardiness that was developed by Washington State University.  The public

variety, released in 1992, was planted on about 8,000 acres in the region in 2011,

according to the figures.

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. (206) 682-5600 • FAX (206) 682-2992

37.   "WB528" is a semi-dwarf soft white <u>winter</u> wheat variety developed by WestBred, of Bozeman, Montana.  WestBred was purchased by Monsanto in 2009.

38.   Russ Karow, head of the Department of Crop and Soil Sciences at Oregon State University, said that to his knowledge neither Rod nor WB528 had been genetically engineered with the Roundup Ready gene. "From what I know, the work done in the (late 1990s and) early 2000s, that was all done with a variety called Bobwhite," Karow said.  Bobwhite is a <u>spring</u> wheat variety.

39.   The farmer who discovered the genetically engineered wheat reported the finding to an Oregon State University researcher, who tested plant samples using "Roundup Ready" quick test strips and genetic analysis.  The results confirmed that the plants were from Monsanto's unapproved seeds and contained transgenic constructs making them resistant to glyphosate. The farmer's field was never used for trials of Monsanto's Roundup-resistant wheat.

40.   After the Oregon State researchers determined that the plants contained the glyphosate-resistant gene, federal scientists also confirmed that the plants were resistant to glyphosate herbicide.  On May 28, 2013, the U.S. Department of Agriculture's Animal and Plant Health Inspection Service (APHIS) announced the results and publicized that an unauthorized Roundup Ready genetically-engineered trait had been detected in volunteer wheat from the

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. (206) 682-5600 • FAX (206) 682-2992

Eastern Oregon farm in question. The announcement stated that APHIS will investigate to determine how this regulated article appeared outside of a confined test environment. On June 3, 2013, a spokesman with the USDA stated that a team of 15 investigators is collecting evidence and information.

41.    The announcement led to immediate concern that the development could disrupt exports of soft white wheat from the Pacific Northwest. For example, on May 28, 2013, the Japanese Ministry of Agriculture, Food and Fisheries (MAFF) cancelled its soft white wheat order, but did purchase its regular allotment of red spring wheat and red winter wheat. An official with the Japanese Embassy stated that the country would cancel orders for Pacific Northwest soft white wheat because Japanese people were "concerned about the discovery of unapproved wheat."

42.    Similarly, it was reported on May 31, 2013 that Japan had postponed a 25,000-ton order of soft white wheat from a Portland, Oregon grain shipper and that South Korea and the European Union have called for tests of American wheat. In particular, South Korea has increased inspections of incoming American wheat. Chinese officials said they would be "monitoring the situation" and Japan's consul general in Portland said on May 31 that his country would need assurance that Oregon wheat is safe before continuing to import the soft white wheat variety. Japan's decision to suspend soft white wheat imports

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. (206) 682-5600 • FAX (206) 682-2992

from the Pacific Northwest led traders to forecast potential long-term effects on the wheat industry: "Nobody's going to want to buy wheat from the PNW (Pacific Northwest) for a while," said an analyst with the Linn Group.

43.    On June 3, 2013, the Wall Street Journal reported that Japan would hold back shipments of previously-contracted soft white wheat from processors as a precautionary measure. This action impacts several cargo shipments of soft white wheat that had been purchased before Japan suspended imports from the Pacific Northwest, but had yet to be delivered to the country.

44.    In Taiwan, the Taiwan Flour Mills Association announced it would not accept soft white wheat from Oregon and asked suppliers for assurances that future shipments would be free from genetically-engineered wheat. It was reported on June 3, 2013 that Taiwan's Council of Agriculture and Department of Health are conducting an ongoing investigation.

45.    The last reported field trial of the specific type of Roundup-resistant wheat detected in the Eastern Oregon field occurred in 2005. Absent continued field trials, it is not known how this genetically engineered wheat appeared eight years later, but it must have contaminated the conventional wheat in some manner during the field trial operations from 1998 to 2005, and persisted, undetected, in wheat seed supply. According to Doug Gurian-Sherman, senior scientist at the Union of Concerned Scientists: "Somebody has been breeding this

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. (206) 682-5600 • FAX (206) 682-2992

wheat, inadvertently for a number of years, whether a seed company or this farmer."

### D.   Monsanto's Knowledge of Genetically-Engineered Wheat Concerns

46.   Monsanto was well aware of concerns regarding the safety of genetically-engineered wheat and the potential detrimental market effects arising from the use of such crops.

47.   After conducting the field tests, Monsanto dropped its development of genetically-engineered wheat in 2004, following concerns from U.S. farmers that genetically-engineered wheat could endanger wheat exports. In a statement made on May 9, 2004, Monsanto acknowledged that there was "not a sufficient market to make the introduction of its GE wheat worthwhile" and said it would concentrate on other crops, such as corn, cotton and oilseeds.

48.   A May 10, 2004 article in the United Kingdom's *The Guardian* reported: "Monsanto, the world's biggest seller of GE seeds, had looked to the development and introduction of GE wheat to fulfill a dream of dominating the world's bread market . . . but consumer resistance to the idea of eating GE bread – particularly in Europe – meant the biggest part of the U.S. export market would disappear overnight."

49.   Similarly, a May 11, 2004 article in the New York Times reported that Monsanto's wheat "was genetically engineered to be resistant to Monsanto's

COMPLAINT - 16

5624/001/270866.1

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. (206) 682-5600 • FAX (206) 682-2992

Roundup herbicide, which would allow farmers to spray their fields to kill weeds while leaving the crop intact. While Roundup Ready wheat attracted the expected opposition from consumer groups and environmental advocates, what was unusual in this case was the opposition of many American and Canadian farmers, who have eagerly adopted other biotechnology crops. These farmers say that wheat buyers in Europe, Japan and some other countries had told them they would not buy genetically engineered wheat because they thought consumers did not want it."

50.     Recent news articles have reported that Monsanto has started conducting field trials of a new GE wheat version in two states. A Bloomberg News article reported on May 31, 2013 that Monsanto planted 150 acres of wheat in Hawaii last year that was genetically engineered to tolerate glyphosate and tested an additional 300 acres of wheat engineered with glyphosate tolerance in North Dakota this year. The same article quoted a Monsanto statement from late May 2013 where the company said it had completed "closing out the Roundup Ready wheat program" nine years ago.

51.     Monsanto knew, or should have known, that the existence of genetically-engineered wheat – commingled within the general wheat supply – would cause significant disruptions in the wheat export market, and that such a situation could involve huge disruptions in the wheat trade while imposing

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. (206) 682-5600 ● FAX (206) 682-2992

additional costs on U.S. wheat farmers and specifically Pacific Northwest soft white wheat farmers. These costs eventually would detrimentally impact worldwide prices for Pacific Northwest soft white wheat, causing significant financial damage to wheat farmers.

52. Despite this knowledge, Monsanto tested genetically-engineered wheat from 1998 to 2005 without adequate safeguards to prevent its release into fields where it could comingle with non-genetically engineered wheat.

53. Monsanto failed to instruct, oversee or control field trial operators adequately to ensure that its genetically-engineered wheat was adequately segregated, at least, in part, because Monsanto was confident during the testing time period of 1998 to 2005 that genetically-engineered wheat would eventually be approved for commercial use, including exports. Such wrongful conduct by Monsanto led directly to contamination and market deterioration problems that damaged Plaintiffs and all soft white wheat farmers. In the end, after years of testing and a large economic expenditure for research, Monsanto never sought to develop and market genetically-engineered wheat commercially because it knew that domestic and foreign buyers would reject it.

54. Monsanto knew, or should have known, of the potential that genetically-engineered wheat from prior field testing could have spread. Indeed, similar releases of unapproved crops have impacted the corn and rice markets.

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. (206) 682-5600 ● FAX (206) 682-2992

55.    As a result of unapproved genetically-engineered wheat being found in a field in Eastern Oregon in May 2013, confidence in the integrity and safety of the Northwest's soft white wheat crop has evaporated in export markets such as Japan and South Korea.

56.    Due to Monsanto's wrongful conduct, soft white wheat destined for export markets for use in food products has been rejected for the purposes for which it was intended.  Because scheduled shipments already have been postponed and canceled, the presence of genetically-engineered wheat has detrimentally impacted the domestic and global wheat markets and damaged Plaintiffs and other wheat farmers.

57.    As a result of Monsanto's wrongful conduct, Japan, one of the largest foreign markets for U.S. wheat, has already halted imports and expressed continuing concerns about the safety of soft white wheat. Other countries, such as South Korea and Taiwan, either have increased inspections or are monitoring the situation.

58.    Similarly, as a result of Monsanto's wrongful conduct, the European Union is urging its 27 member states to test certain wheat shipments from the United States.  The EU imports more than 1.1 million tons of U.S. wheat each year, with soft white wheat accounting for 80 percent of that total.  According to news reports in the *Washington Post*, a representative from the E.U. stated that it

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. (206) 682-5600 • FAX (206) 682-2992

1   would act to "ensure E.U. zero-tolerance policy [for genetically engineered

2   wheat] is implemented."

3

4   **E.      The Further Impact of Genetically-Engineered Wheat on
            Plaintiffs and Other Wheat Farmers**

5

6       59.     The discovery of genetically-engineered wheat in an Eastern Oregon

7   field, as a result of Monsanto's wrongful conduct, has detrimentally affected the

8
    ability of Plaintiffs and all other non-GE soft white wheat farmers to sell their
9
10  wheat into export channels through the storage, handling, processing, and export

11  companies.  Furthermore, many wheat exporters will undertake and require

12  expensive and time-consuming testing of all wheat crops prior to purchasing

13
    them from farmers to determine whether they have genetically engineered
14
15  content and are fit for export.  Even if no genetically engineered content is

16  detected, the economic burden of testing will be transferred to soft white wheat
17
    farmers by, inter alia, diminished bids for wheat brought to the market.
18

19      60.     The impact of testing will additionally burden wheat farmers by,

20  inter alia, potentially requiring loads of wheat that test positive to be destroyed
21
    and deemed unfit for human consumption or barred from export.
22

23      61.     Moreover, the presence of genetically-engineered wheat has and

24  will result in the loss of certain markets within the United States and certain
25
26  export markets for soft white wheat and, coupled with the above-described

27

COMPLAINT - 20

5624/001/270866.1

1  export declines, has and will continue to result in reduced prices for all soft white

2  wheat.

3
4          62.     Furthermore, the cost of segregating non-genetically engineered soft

5  white wheat from genetically-engineered wheat will be significant.  As a result of

6  Monsanto's wrongful conduct, soft white wheat farmers will have to take extra

7
8  steps to attempt to preserve the integrity and economic value of their wheat

9  crops.

10         63.     Wheat farmers have also sustained damages to their property as a

11
12 result of Monsanto's wrongful conduct, through the potential contamination of

13 the entire wheat farming and production chain, including, but not necessarily

14
15 limited to, farmland, farming equipment, storage facilities, harvesting equipment,

16 seed cleaning and conditioning apparatus, storage facilities, and transportation

17 facilities and equipment.

18
19         64.     Monsanto's wrongful conduct continues to place Plaintiffs and all

20 other wheat farmers at risk for further damages caused by the cross-pollination,

21 commingling, and contamination of their soft white wheat crops with

22
23 genetically-engineered wheat and from the continued detrimental market effects

24 of the contamination on U.S. wheat prices, especially for exports.

25

26

27

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. (206) 682-5600 ● FAX (206) 682-2992

## VI. INJURIES TO PLAINTIFFS AND WHEAT FARMERS

65.     The detection of genetically-engineered wheat in an Eastern Oregon field has already resulted in the loss of certain export markets and domestic markets for soft white wheat and will continue to do so.

66.     Market changes resulting from the commingling of genetically-engineered wheat with non-genetically engineered wheat has created inefficiencies expressed in, inter alia, lower prices and higher producer costs.

67.     Many wheat buyers will not accept deliveries without proof that the soft white wheat crops being delivered to them do not possess any traces of genetically-engineered wheat, thus requiring expensive and time-consuming testing.  Furthermore, the costs of storing and moving any other discoveries of genetically-engineered wheat through segregated channels will be significant. Storage and transportation entities will need to design and use systems and equipment for testing and segregation, rather than handling all soft white wheat products the same way. Plaintiffs and all other members of the Class will share the economic burden of these costs.

68.     As set forth above, the impact of testing for genetically-engineered wheat at various points in the wheat marketing channel will add extra expense by leaving wheat that tests positive out of certain markets.  Plaintiffs and all other members of the Class will share the economic burden of these costs.

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. (206) 682-5600 ● FAX (206) 682-2992

69.     Commodities traders, financial reporters, and agricultural officials have stated that the presence of genetically-engineered wheat has and will continue to impact soft white wheat prices, wheat futures prices, and U.S. wheat exports detrimentally.

70.     As a result of Monsanto's wrongful conduct, soft white wheat farmers have also suffered harm to their property through the contamination of the wheat farming and production chain, including, but not necessarily limited to, farmland, farming equipment, storage facilities, harvesting equipment, and transportation facilities and equipment.

71.     Plaintiffs and all members of the Class have been damaged and are at continuing risk of further damages arising out of Monsanto's wrongful conduct.

## VII. CLASS ACTION ALLEGATIONS

72.     Plaintiffs bring these claims against Monsanto, pursuant to Fed. R. Civ. P. 23(a),23(b)(1 ), 23(b)(2), and 23(b)(3), individually and on behalf of a class consisting of:

> All persons and entities who grew, owned, cultivated, harvested and/or had planted soft white wheat from May 29, 2013 to present.  Excluded from this Class are the Court and its employees; Monsanto; any parent, subsidiary, or affiliate of Monsanto; and all employees and directors who are or have been employed by Monsanto during the relevant time period.

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. (206) 682-5600 • FAX (206) 682-2992

73.     Plaintiffs reserve the right to amend this class definition prior to class certification.

74.     Plaintiffs seek to represent the class for any damages and injunctive relief.

75.     The Class is so numerous and geographically dispersed among four large states that joinder of all members is impracticable.  The exact number and identity of Class Members is not known.  Plaintiffs believe that thousands of persons cultivated and/or harvested soft white wheat during the relevant time period and would be members of the class.  Accordingly, Rule 23(a)(l) is thus satisfied.

76.     Common questions of fact and law exist here, satisfying the requirement of Rule23(a)(2),  including but not limited to:

        (a)     whether Monsanto is liable to Plaintiffs and the other members of the Class for damages, and the proper measure of such damages;

        (b)     whether Plaintiffs and the other Class Members are entitled to injunctive relief to decontaminate their farming, harvesting, and transportation equipment, and their on-farm storage facilities, to monitor, investigate, and prevent contamination in future growing seasons;

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. (206) 682-5600 • FAX (206) 682-2992

(c)     whether Monsanto is responsible for contamination of non-genetically engineered soft white wheat;

(d)     whether Monsanto field test non-genetically engineered wheat in such a manner that commingling with non-genetically engineered wheat was reasonably foreseeable;

(e)     whether Monsanto was negligent or negligent per se in its supervision of field testers who oversaw the testing program affiliated with genetically-engineered wheat from 1998 to 2005;

(f)     whether Monsanto was negligent or negligent per se in the testing,  growing, storing, transport and disposal of genetically-engineered wheat;

(g)     whether Monsanto's conduct in contaminating the soft white wheat supply and the entire wheat farming and production chain constitutes a public nuisance;

(h)     whether Monsanto's conduct in contaminating Plaintiffs' and/or Class Members' farmland and equipment constitutes private nuisance;

(i)     whether Monsanto is strictly liable for damages caused by its testing, growing, storing, transport and disposal of genetically-engineered wheat; and

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. (206) 682-5600 • FAX (206) 682-2992

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

(j)     whether Monsanto is liable to Plaintiffs and Class Members for damages and the proper measure of such damages.

77.    Plaintiffs' claims are typical of the other Class Members' claims and do not conflict with the interests of any other Class Members, as Plaintiffs and all Class Members were damaged by Monsanto's wrongful conduct, and the relief Plaintiffs seek is common to the relief sought on behalf of the Class. Rule 23(a)(3) is thus satisfied.

78.    Plaintiffs will fairly and adequately protect the interests of the other Class Members and have no interests that are antagonistic to or which conflict with those of other Class Members. Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel experienced in litigation of this nature to represent them and the members of the Class.  Rule 23(a)(4) is thus satisfied.

79.    Absent a representative class action, members of the Class would continue to suffer the harm described herein, for which they would have no remedy.  Even if separate actions could be brought by individual farmers, the resulting multiplicity of lawsuits would cause undue hardship and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated farmers, substantially impeding their ability to protect their interests, while

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. (206) 682-5600 • FAX (206) 682-2992

establishing incompatible standards of conduct for Monsanto. The proposed

Class thus satisfies the requirements of Fed. R. Civ. P. 23(b)(l).

80.     Monsanto has acted and/or refused to act on grounds generally

applicable to Plaintiffs and the other Class Members, thereby rendering class

certification and injunctive and/or declaratory relief with respect to the Class as a

whole appropriate as well.  Certification under Fed. R. Civ. P. 23(b)(2) would,

therefore, be appropriate.

81.     As discussed above, numerous common questions of fact and law

exist.  These questions predominate over the individual questions presented in

this action.  The predominance requirement of Rule 23(b)(3) is thus satisfied.

82.     A class action is the superior method for the fair and efficient

adjudication of this controversy, because joinder of all Class Members is

impracticable.  Because the damages suffered by individual Class Members may

be relatively small, the expense and burden of litigation would prevent Class

Members from individually redressing the wrongs done to them. Where, as here,

the size and nature of individual Class Members' claims would allow few, if any,

Class Members to seek legal redress against Monsanto for the wrongs

complained of herein, a representative class action is both the appropriate vehicle

by which to adjudicate these claims and is essential to the interests of justice.

Furthermore, a class action regarding the issues in this Court creates no

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. (206) 682-5600 • FAX (206) 682-2992

significant problems of manageability.  The superiority and manageability requirements of Rule 23(b)(3) are thus satisfied.

83.     Alternatively, a class action is appropriate under Rule 23(c)(4)(A) with respect to particular issues.

## VIII. **PLAINTIFFS' CLAIMS FOR RELIEF**

### **Count 1 – Negligence Per Se**

84.     For the purposes of Count I, Plaintiffs repeat and reallege all previous paragraphs above as though fully set forth herein.

85.     Monsanto's acts and/or omissions as described above constitute negligence per se. Monsanto had a regulatory duty to the Class Members to test, grow, store, transport and dispose of genetically-engineered wheat and associated seeds following field testing in a manner that would not result in contamination of the wheat market prior to regulatory approval.

86.     Monsanto breached this duty by testing, growing, storing, transporting and disposing of genetically-engineered wheat in such a manner as to allow contamination of wheat fields in the future.

87.     Such breaches are the direct and proximate causes of the damages suffered by Plaintiffs and the other Class Members as outlined herein.

88.     Plaintiffs and the other Class Members have suffered injury and property damage by the testing, growing, storing, transporting and disposal of

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. (206) 682-5600 • FAX (206) 682-2992

genetically-engineered wheat as outlined herein and seek compensatory damages requiring that Monsanto decontaminate their farming, harvesting and transportation equipment, and their on-farm storage facilities, to prevent contamination in future growing seasons and beyond.  Plaintiffs further seek, on behalf of themselves and all other members of the Class, punitive damages as a result of Monsanto's reckless and willful conduct, and all costs and attorneys' fees as allowed by law.

## Count 2 – Negligence

89.    For the purposes of Count II, Plaintiffs repeat and reallege all previous paragraphs above as though fully set forth herein.

90.    Monsanto's acts and/or omissions as described above constitute negligence.

91.    Monsanto had a duty to the Class Members to test, grow, store, transport and dispose of genetically-engineered what in a manner that would not result in contamination of neighboring wheat crops or in the contamination of Class Members' wheat during the storage, shipment, and other processes that constitute the supply chain.

92.    Monsanto breached this duty by testing, growing, storing, transporting and disposing of genetically-engineered wheat in such a manner as

COMPLAINT - 29

5624/001/270866.1

1   to allow contamination of wheat fields in the future as well as the storage,

2   shipment, and wheat supply chain in the future.

3
4          93.     In addition, or in the alternative, Monsanto had a duty to refrain

5   from testing, growing, storing, transporting and disposing of genetically-

6   engineered wheat in a manner that would foreseeably cause harm to Plaintiffs

7
8   and the other members of the Class.

9          94.     Monsanto breached this duty by failing to exercise reasonable care

10  to prevent the foreseeable contamination of the Pacific Northwest's soft white

11
12  wheat through cross-pollination or commingling that would naturally result from

13  the testing, growing, storing, transporting and disposing of genetically-

14  engineered wheat as outlined herein.

15
16         95.     Such breaches are the direct and proximate causes of the damages

17  suffered by Plaintiffs and the other Class Members as outlined herein.

18
19         96.     Plaintiffs and the other Class Members have suffered injury and

20  property damage by the testing, growing, storing and disposing of genetically-

21  engineered wheat by Monsanto as outlined herein and seek compensatory

22
23  damages and injunctive relief requiring that Monsanto decontaminate their

24  farming, harvesting and transportation equipment, and their on-farm storage

25  facilities, to prevent future contamination.  Plaintiffs further seek, on behalf of

26
27  themselves and all other members of the Class, punitive damages as a result of

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. (206) 682-5600 ● FAX (206) 682-2992

Monsanto's reckless and willful conduct, and all costs and attorneys' fees as allowed by law.

## Count 3- Public Nuisance

97.     For the purposes of Count III, Plaintiffs repeat and reallege all previous paragraphs above as though fully set forth herein.

98.     Monsanto has created a public nuisance by causing contamination of soft white wheat with genetically-engineered wheat, which constitutes an unreasonable and significant interference with public rights, public health, public comfort and public convenience.

99.     This substantial interference is imposed on the community at large and on a considerable and diverse number of persons.  It arises from: (a) the testing, growing, storing, transporting and disposing of genetically-engineered wheat by Monsanto without adequate limitations to prevent contamination; and/or (b) the testing, growing, storing, transporting and disposing of genetically-engineered wheat with the knowledge that it would contaminate soft white wheat by commingling; and/or (c) the testing, growing, storing, transporting and disposing of genetically-engineered wheat with the knowledge that it could contaminate the human food supply prior to regulatory approval.

100.   Plaintiffs and the other Class Members have suffered injury from Monsanto's public nuisance distinct from that suffered by the general public in

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. (206) 682-5600 • FAX (206) 682-2992

that they suffer business losses in the form of rejection of their wheat crops by certain markets (especially foreign exports), reduced or restricted demand for their crops in certain markets, reduced price for their crops at market, added costs for segregation in order to sell their crops, and contamination of their property.

101.   Plaintiffs and the other Class Members seek compensatory damages and injunctive relief requiring abatement of the public nuisance by mandating that Monsanto decontaminate their farming, harvesting and transportation equipment, and their storage facilities, to prevent future contamination, and also seek punitive damages as a result of Monsanto's reckless and willful conduct, and all costs and attorneys' fees as allowed by law.

### Count 4 – Private Nuisance

102.   For the purposes of Count IV, Plaintiffs repeat and reallege all previous paragraphs above as though fully set forth herein.

103.   Monsanto has created a private nuisance through the testing, growing, storing, transporting and disposing of genetically-engineered wheat. Monsanto conducted field testing without instituting adequate safeguards to prevent against cross-pollination or commingling that could result when genetically-engineered wheat pollen or seeds contaminate neighboring crops or fields.  As a result, the soft white wheat farming and production chain, including but not limited to, farmland, equipment, storage facilities, harvesting equipment,

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. (206) 682-5600 • FAX (206) 682-2992

1 transportation facilities and equipment potentially are contaminated with

2 genetically-engineered wheat.

3

4       104.    Monsanto's acts and/or omissions constitute the unreasonable,

5 unusual, or unnatural use of its property in a manner that substantially impaired

6 the right of Plaintiff and the other members of the Class to the peaceful

7

8 enjoyment of their property.

9       105.    The interference with the use and enjoyment of the property caused

10 by Monsanto is substantial, unreasonable, and ongoing, as evinced by the fact

11

12 that genetically-engineered wheat was discovered on an Eastern Oregon farm in

13 May 2013, approximately 12 years after Monsanto's field testing in Oregon had

14 concluded.

15

16       106.    Plaintiffs and the other Class Members seek compensatory damages

17 and injunctive relief requiring abatement of the private nuisance by mandating

18 that Monsanto decontaminate their farming, harvesting and transportation

19

20 equipment, and their on-farm storage facilities, and take other action necessary to

21 prevent future contamination, and also seek punitive damages as a result of

22 Monsanto's reckless and willful conduct, and all costs and attorneys' fees as

23

24 allowed by law.

25

26

27

COMPLAINT - 33

5624/001/270866.1

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. (206) 682-5600 ● FAX (206) 682-2992

1

## <u>Count 5 – Strict Liability</u>

2

3

4

107.   For the purposes of Count V, Plaintiffs repeat and reallege all previous paragraphs above as though fully set forth herein.

5

6

7

8

9

10

11

108.   Monsanto tested genetically-engineered wheat, a defective and unreasonably dangerous product, which, when used as anticipated, produced wheat unapproved by regulatory authorities that became commingled with Plaintiffs' and all other members of the Class' soft white wheat and contaminated their wheat crops.

12

13

14

15

16

17

18

19

20

21

109.   The testing, growing, storing, transporting and disposal of genetically-engineered wheat has resulted in the contamination of wheat fields, causing export markets to restrict, or ban altogether, importation of soft white wheat. Export and domestic markets are now and/or will continue to impose stringent testing and authorization requirements on soft white wheat sellers.  As a result of such market conditions, wheat farmers are suffering and will continue to suffer injuries in the form of depressed wheat prices and increased producer costs.

22

23

24

110.   Exercise of reasonable care could not have eliminated the risk of such contamination and resulting injuries.

25

26

27

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. (206) 682-5600 ● FAX (206) 682-2992

111.   Monsanto's testing, growing, storing, transporting and disposal of genetically-engineered wheat not approved by regulatory authorities has caused unprecedented damage to Plaintiffs and all other members of the Class.

112.   Given the structure and operation of the U.S. wheat production and handling system, Monsanto's testing, growing, storing, transporting, and disposing of genetically-engineered wheat was improper.

113.   Any benefit derived from the field testing program of genetically-engineered wheat from 1998 to 2005 is greatly outweighed by the harms resulting from contamination of soft white wheat.

114.   Plaintiffs and the other Class Members seek compensatory damages and injunctive relief mandating that Monsanto decontaminate their farming, harvesting and transportation equipment, and their on-farm storage facilities, and take other actions necessary to prevent future contamination, and also seek punitive damages as a result of Monsanto's reckless and willful conduct, and all costs and attorneys' fees as allowed by law.

## IX. <u>REQUEST FOR RELIEF</u>

WHEREFORE, Plaintiffs, on their own behalf and on behalf of the other members of the Class proposed in this Complaint, respectfully request that the Court enter judgment in their favor and against Defendants, as follows:

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. (206) 682-5600 ● FAX (206) 682-2992

(a)     That the Court certify the Class pursuant to Rules 23(a), 23(b)(2), and, 23(b)(3), and designate the named Farmer Plaintiffs as the representative of the Class;

(b)     That the Court adjudge and decree that Monsanto is liable to Plaintiffs and the members of the Class for:

        (i)     Negligence per se;

        (ii)     Negligence;

        (iii)     Public Nuisance;

        (iv)     Private Nuisance; and

        (v)     Strict liability.

(c)     That the Court order Monsanto:

        (i)     To pay compensatory and consequential damages;

        (ii)     To pay exemplary and punitive damages;

        (iii)     To undergo injunctive relief requiring the decontamination of Class Members' farmland, farming, harvesting, and transportation equipment, as well as their on-farm storage facilities, to prevent contamination for the future growing seasons;

        (iv)     To pay the costs of this action, including attorneys' fees and expenses;

        (v)     To pay pre- and post- judgment interest;

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. (206) 682-5600 • FAX (206) 682-2992

1       (vi)    To allow Plaintiffs to amend these pleadings to

2 conform to evidence produced at trial; and

3       (vii)    To grant Plaintiffs such other and additional relief as

4 the Court deems equitable, appropriate, and just;

5       (d)    Plaintiffs demand a jury trial on all claims so triable.

6 Respectfully submitted this 5th day of June, 2013.

**TOUSLEY BRAIN STEPHENS PLLC**

By:*s/ Kim D. Stephens, WSBA #11984*
Kim D. Stephens, WSBA #11984
kstephens@tousley.com
Mark Deife, WSBA #15532
mdeife@tousley.com
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
Telephone: (206) 682-5600
Facsimile: (206) 682-2992

Richard S. Lewis
rlewis@hausfeldllp.com
James J. Pizzirusso
jpizzirusso@hausfeldllp.com
Mindy B. Pava
mpava@hausfeldllp.com
**HAUSFELD LLP**
1700 K Street, NW Suite 650
Washington, D.C. 20006
Telephone: (202) 540-7200
Facsimile: (202) 540-7201

*Attorneys for Plaintiffs and the Proposed Class*

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. (206) 682-5600 • FAX (206) 682-2992